Jack WHITEKER, Plaintiff In Error,

v.

Berta L. WHITEKER, Defendant in Error.

No. 38087.

Supreme Court of Oklahoma.

Dec. 2, 1958.

Wheeler & Wheeler, Tulsa, for plaintiff in error,

Streeter Speakman, Jr., Sapulpa, for defendant in error.

CARLILE, Justice.

This is an appeal by Jack Whiteker from a judgment of the District Court of Creek County granting Berta L. Whiteker a divorce from him by reason of his fault and awarding her alimony and a division of property.

The plaintiff in error, who was defendant in the trial court, does not question or challenge the validity of the judgment vacating and dissolving the marital relationship between the parties but complains only of the amount of property awarded plaintiff and argues that the award in her favor is inequitable and excessive. The defendant in error filed a motion to dismiss this appeal on the ground that the defendant married after the expiration of the six months following the divorce decree and had accepted the property awarded him by the trial court and was thereby estopped from asserting the invalidity of the judgment and waived his right of appeal.

■ The motion to dismiss was denied on April 15, 1958 and the merits of the motion and its application is again urged in the answer brief of the defendant in error but we find no reason to depart from our previous ruling denying the motion. The parties will be referred to here as they appeared in the trial court.

The record shows the following facts or circumstances leading up to the divorce decree: At the time of their marriage in March, 1946, both plaintiff and defendant were residents of the City of Bristow and each had been married previously, the plaintiff had a daughter by her former husband, the daughter was married at the time the present action was instituted. The plaintiff testified that at the time of her marriage with defendant she had $3,500 in the bank and sold her automobile for an additional sum of $1,500, that she received $135 a month from a trust fund for the support of her daughter, some of which was expended in the operation and repair of the home, that at the time of her marriage the defendant owned a garage apartment (4

lots) for which he paid $3,000, $1,400 of which was paid after the marriage, that they remodeled and refurnished the lower part of the apartment as a living room at a cost of $3,500, that in 1953 further improvements were made on the building by adding thereto 3 bedrooms with baths, a cooling and heating system and a swimming pool, that a $13,000 loan on the premises was obtained from an investment company to pay some of the costs, $10,700 of which was unpaid at the time the divorce herein was granted, that in addition to the amount owing the investment company they owed $3,000 on a note given to plaintiff's parents for money used in the building.

The record shows that at the date of their marriage the defendant owned some mineral interests of a limited value and owned the Palace Drug Store in Bristow. He inherited a part of the store from his father in 1937 and the remainder he purchased from other heirs, one witness estimated the store value at $10,000. The defendant owed his former wife $4,600 as alimony payable in monthly installments. The defendant testified that when he married plaintiff he had $18,000 in cash which he kept in a safety deposit box in the Community State Bank in Bristow and said he and his wife used it up during the 3 or 4 years following their marriage. He was asked on cross-examination what he did with the money and he answered "It was spent." He was asked if he could tell how it was spent and he said "No, I can't, in the merry-go-round we were on * * * the continuous drinking parties, buying whiskey for everyone in the county." He said he had the money at the time he borrowed $6,000 from the bank so the drug store would have plenty of checking account while he was on his wedding trip.

The plaintiff testified that defendant never told her he had $18,000 but she said the $6,000 borrowed from the bank was used to pay· accounts owing by the drug store. The plaintiff started working in the drug store within a year following the marriage and continued to do so thereafter. The de-fendant spent some of his time in the drug store but was absent at times investigating and purchasing mineral rights, mostly out of the state, which produced small income, and for which he paid approximately $30,-000.

In March, 1955 the parties entered into a written agreement whereby they became equal and joint owners and operators of the Bristow drug store. On April 7, 1955 the Bristow store was completely destroyed by fire, it was covered by a $44,000 insurance policy, the loss was settled during the pendency of this action by the payment of $40,000 and one half of the sum, $20,000, was awarded each of the parties. There was also a $14,000 business-interruption policy on the Bristow store. The parties borrowed $10,000 from a Bristow bank with which to purchase a stock of drugs and moved in some store equipment which was formerly used in one of the stores in Tulsa and the Bristow store was reopened for business.

In September, 1955, the parties purchased a drug store in Tulsa for which they paid $24,000 and borrowed the money to do so. The store was incorporated and the plaintiff held 90% of the stock. In July, 1956, a second drug store in Tulsa was purchased by the defendant, Jack Whiteker, for which he gave his personal notes to the store creditors in the amount of $22,000. That store was incorporated and defendant retained eight shares of the stock, the plaintiff one share and a Mr. Loeffler one qualifying share. After the purchase of the second store in Tulsa, the defendant spent most of his time there and about January or February, 1957, the parties ceased living together as man and wife.

On August 23, 1957, the trial court granted plaintiff a divorce and adjudged and decreed that she have as alimony and as her share of the division of the property, the home of the parties in Bristow, all the assets of the drug store in Bristow, all of the stock of the first drug store purchased by the parties in Tulsa, known as Owl Drug No. 2, one half of the proceeds, $20,000,

collected on the fire insurance policy covering the Bristow store, the $14,000 insurance policy against business interruption of the Bristow store, a Packard automobile valued at $300, a ½₂nd overriding royalty interest in an oil and gas lease on 80 acres, in Creek County and an interest in two oil and gas leases in Wheeler County, Texas. In awarding the described property, the Court adjudged and decreed that the plaintiff assume, pay and hold the defendant harmless from all liability of the Tulsa Owl Drug Store No. 2, including but not limited to a $4,600 note owing the Community State Bank of Bristow, and a $14,000 note owing Mr. and Mrs. Trowbridge (plaintiff's parents), that plaintiff assume, pay and hold the defendant harmless from all debts or obligations owed by the drug store at Bristow, including but not limited to $10,000 owed the Community State Bank, and accounts payable in the sum of $18,759 and ordered and decreed that plaintiff assume and pay the balance upon the mortgage covering the home property. The evidence shows that there was some indebtedness owing by the Bristow store to Owl Drug Store No. 3 in Tulsa for used store fixtures and for cash, which indebtedness the Court ordered cancelled.

The defendant, Jack Whiteker, was awarded as his separate property, free and clear of all claims of the plaintiff, all the capital stock of Jack Whiteker Owl Drug, Inc., known as Owl Drug Store No. 3 of Tulsa. He was directed to hold plaintiff harmless against all debts and liabilities of that store. In addition thereto, defendant was awarded certain capital stock of the Empire Drug Co., and the United Drug Company, value about $800, also all mineral and royalty lease interests owned by the parties not specifically awarded plaintiff, and one half of the money, $20,000, collected on the fire insurance policy covering the original Bristow Drug Store. The Court ordered that each of the parties pay his or her own attorney fees.

■ The defendant, in support of his assignments of error, cites the case of Dresser v. Dresser, 164 Okl. 94, 22 P.2d 1012 and quotes at length in his brief from many out-of-state decisions referred to in that opinion. He also submits a list of Oklahoma divorce cases showing the property values involved in each action and the percentage of the husband's estate allowed as alimony by the trial court and by the Supreme Court. No fixed percentage or rule is available by which to measure or determine the amount of alimony or property to be awarded a party. Each case depends on its own facts and circumstances. In Dresser v. Dresser, supra, the syllabus is, in part, as follows:

"1. There is no rule of law requiring any fractional part of so-called joint accumulations, or of the husband's separate property, to be set apart or allowed to the wife, or payments of money, in gross or installments, to the wife, upon divorce awarded her for the husband's fault, as each case depends upon its own facts and circumstances."

The opinion in Weatherspoon v. Weatherspoon, 199 Okl. 543, 188 P.2d 225, 226, a divorce action, states:

"As to the division of property, no hard and fast rule can be laid down. When a divorce is granted, it is generally a lifting of the responsibilities, financial and other wise, which each party theretofore has borne. * * * The trial court balances the scales of equity by the distribution of property and allowance of alimony. The only restriction placed upon that authority is that sound judicial discretion be used. Where there is no abuse of such discretion, the judgment will not be disturbed by this court."

■ The rule or principle of law announced in the preceding case was followed and applied in the case of Chappell v. Chappell, Okl., 298 P.2d 768, 769, 58 A.L.R. 2d 1214, which holds:

"2. The allowance of permanent alimony rests within the sound discretion of the trial court, to be exercised

in the light of all the surrounding circumstances, and such allowance will not be disturbed on appeal unless clearly against the weight of the evidence."

The defendant claims he was unjustly deprived of his property and that the plaintiff received all the assets. We have read and considered the record, which is of considerable volume, and are of the opinion that the record does not support the defendant's conclusion and claim. The home of the parties was awarded the plaintiff but it was subject to a mortgage indebtedness on which there was due and owing $10,700 which the plaintiff was required to pay. The home at the time of the marriage of the parties consisted of a garage apartment for which the defendant had contracted to pay $3,000, $1,400 of which was paid after the marriage. Much of the value of the home consisted of the improvements thereon subsequent to the marriage. The drug store in Bristow awarded the plaintiff was subject to an indebtedness against the same consisting of a $10,000 note owing the bank in Bristow and an unpaid balance in the sum of $18,759 which indebtedness the plaintiff was directed to pay and to hold the defendant harmless as against the same. The defendant does not point out what value, if any, he thinks the store had above the indebtedness against the same. The defendant testified that the equipment in the re-established Bristow store had been previously used in one of the stores in Tulsa and that the value of such equipment was about $100.

Prior to the destruction of the original Bristow store by fire the parties plaintiff and defendant, entered into a written agreement whereby each owned an undivided equal share in the store and when it was destroyed they collected $40,000 insurance which the trial court divided equally between them. There was a business-interruption insurance policy on the Bristow store for the maximum sum of $14,000. That policy was awarded the defendant-in-error and the liability thereunder had not been settled or paid at the time of the decree.

The No. 2 store in Tulsa was awarded the plaintiff but she was ordered to assume and pay the indebtedness against the store which included $4,600 due the Bristow bank and the $14,000 note due and owing to the plaintiff's parents. The plaintiff was also awarded a Packard automobile valued at $300 and some mineral royalty and an interest in two oil and gas leases of limited or questionable value. The defendant, in addition to the $20,000 insurance money, which he was awarded as his share of the Bristow store, was awarded the Owl Drug Store No. 3, which he purchased in 1956 for which he gave the store creditors his personal notes for the sum of $22,000. At the trial, the defendant testified that the value of that store sales had increased 40% and he expected an additional 100% increase and asserted that he did not want to sell the store. He now asserts in his brief that the store is a liability and not worth the indebtedness against it, which claim is probably correct. Defendant was awarded some United Drug Co. and Empire Drug Corporation stock having a value of about $800, also all interest in a life insurance policy having a cash value of $466, also some mineral interests the value of which is not shown.

The plaintiff was awarded the larger share of the property, much of which was acquired during their marriage, but, with the exception of the fire insurance money, it was subject to an indebtedness of $58,000 which plaintiff was adjudged and decreed to pay. The defendant was relieved of payment of all the indebtedness except such as he owed on the Owl Drug Store No. 3 in Tulsa. Jorski v. Jorski, Okl., 304 P.2d 1057, 1058, holds:

"2. In a divorce action the division of jointly acquired property is not required to be equal and the court may make division in kind, with such adjustments in assumption of liabilities, debts, and other payments as may make the division just and equitable. On appeal from such decree, this court will search the entire record, but will not set aside or modify the decree in

the absence of a showing that the division is clearly against the weight of the evidence."

█ Under the facts and circumstances shown, we think the property awarded plaintiff subject to the indebtness against it is not an unjust and inequitable division of the property and alimony awarded. The action is one of equitable cognizance and the judgment in such an action will not be disturbed on appeal unless it is against the clear weight of the evidence.

We have read the record as a whole and find and hold that the judgment of the District Court is not against the clear weight of the evidence and is supported thereby. It follows that the judgment of the court should be and is affirmed.

CORN, V. C. J., and DAVISON, JOHNSON, BLACKBIRD, JACKSON and WILLIAMS, JJ., concur.